THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
PEDRO ROSA RIVERA, Defendant and Appellant.

No. 8806.   Argued July 14, 1941.—Decided July 23, 1941.

*E. Díaz Santana* and *E. Mieres Calimano* for appellant.   *Emilio de
Aldrey, Acting Attorney General,* and *R. A. Gómez, Prosecuting
Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

This is an appeal taken by Pedro Rosa Rivera from a
judgment sentencing him to pay a fine of $50 and to be con-
fined in jail one day for each dollar thereof left unpaid, im-
posed by the District Court of San Juan for a violation of
Section 4 of the Act approved July 25, 1935 (Session Laws
(2) p. 152), known as the Policy Game (*Bolita*) Act.   The
complaint in its pertinent part reads as follows:

"... That on January 11, 1940, at 9:15 p.m., and in 10th Street
of the ward of Capetillo of Río Piedras, within the municipal judicial
District of Río Piedras, which forms part of the judicial district
of San Juan, P. R., the said defendant then and there, did unlaw-
fully, wilfully and maliciously, and with knowledge that they have
been and are used in the illegal policy (*bolita*) game, which game
has been declared to be a public nuisance, *carry* one hundred and
fifty-two lists of three-figure numbers, which lists of numbers repre-
sented—the first three figures—the number chosen or selected by the
purchaser or bettor thereon—and the number, which is separated by
a dot from the said three-figure number—the number of tickets

bought by said purchaser or bettor, the defendant knowing that each number or group of numbers represents a ticket or interest in a clandestine lottery commonly known by the name of *Bolita* (Policy Game).'' (Italics ours.)

Three errors are assigned by the appellant, to wit: first, that the complaint does not charge any offense as it fails to specify in a clear and definite way any violation of a certain and determinate section of the said act; second, that the judgment is against the evidence; and third, that the lower court committed manifest error in admitting evidence which did not support the allegations of the complaint.

■ The first assignment is entirely frivolous. The defendant is clearly charged in the complaint with a violation of Section 4 of Act No. 25 of July 17, 1935, and when stating the facts it is said that he did unlawfully, willfully, and maliciously *carry* a certain number of lists of numbers, knowing that the same had been and were used in the illegal policy (*bolita*) game, whose meaning is explained. The decision in *People v. Salabarría,* 57 P.R.R. 128, cited by the appellant, is not applicable to the case at bar. In the former case the defendant was charged with operating the policy game referred to in section 3 of the act, and it was held that the mere seizure of implements or material used in such game, without further evidence, was not sufficient to sustain the charge. The situation which said case presented was clearly distinguished from the one involved herein, where the defendant is charged with the offense of *carrying* tickets, etc.,—when it was said:

''Section 4 of the act, which is also alleged to have been violated, has no application to the facts of this case. That section has reference to the *carrying or conveying* by any person of any slip of paper, ticket, etc., and also to a defendant who is the 'owner, proxy, agent, person in charge, director or manager, of the game prohibited by this act,' of which there is no evidence in this case, although in the complaint it is alleged that the defendant acted as agent and manager, etc.'' (Italics ours.)

■ The second and third assignments may be decided together, as they both refer to the evidence. In discussing these assignments the appellant insists on treating this case as if it were one involving the operation of a policy game by the defendant and not one of illegal transportation. In our opinion the testimony of detective Saturnino Romero, a witness for the prosecution, clearly shows that the defendant was carrying the lists of the policy game. Said witness testified in part as follows:

"Dist. Atty.—Do you know the defendant, Pedro Rosa Rivera?
Witness.—Yes, sir.
Dist. Atty.—Did you have anything to do with him at that time?
Witness.—Yes, sir.
Dist. Atty.—On what account and where?
Witness.—Well, on January 11, at 9.15 p. m., detective Miranda and myself drove a car along 10th Street and found the defendant with four or five other persons who were delivering to him collections of money from the policy game . . . . . When we alighted from the car *he was in front, facing a little house* on 10th Street; the door was open . . . . the little house·is a two-story structure with a narrow stairway; *and he started running towards the house* and the others went away *and we went after him upstairs and on getting there the money collected was put on a table and seized and the defendant arrested.*

Dist. Atty.—And what did you seize there?
Witness.—152 policy-game lists with three-figure numbers.
Dist. Atty.—What else?
Witness.—And $17.38 in cash.
Dist. Atty.—On whom was that seized?
Witness.—On the defendant.
Dist. Atty.—Where? In what town did that happen?
Witness.—In Río Piedras, on 10th Street.
Dist. Atty.—From where to where did he carry that money and the list?
Witness.—He was on the street and when we arrived in the car he went upstairs and we followed him there. A small two-story house." (Italics ours.)

The decision in *People* v. *Vidal,* 55 P.R.R. 226, cited also by the appellant, does not favor him either, for similarly

as in the case of *People* v. *Salabarría, supra*, the defendant was charged with operating a policy game and not with the carrying of material for the same.

The judgment appealed from must be affirmed.